IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RALPH CIRINO,<br><br>    *Plaintiff*,<br><br> v.<br><br>THE COUNTY OF LEHIGH,<br>PENNSYLVANIA, *et al.*,<br><br>    *Defendants*. | CIVIL ACTION<br>NO. 18-03565 |

**PAPPERT, J.**                                   June 18, 2019

**MEMORANDUM**

  *Pro se* prison inmate Ralph Cirino sued Lehigh County, Lehigh County Correctional Center Warden Dale Miesel and Assistant Warden Janine Donate, PrimeCare Management Corporation, the United States of America, the Department of Justice, and a Jane and John Doe for violating his rights under 42 U.S.C. § 1983, the United States Constitution and Pennsylvania state law. The Court dismissed all claims against the United States, Department of Justice, and Lehigh County Correctional Center as legally baseless pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). *See* (Order, ECF No. 6). The remaining Defendants moved to dismiss all claims against them for failure to state a claim. The Court grants the Defendants' Motion but will allow Cirino an opportunity to amend his Complaint, consistent with this Memorandum.

I

  Cirino suffers from severe asthma and hypertension and is prescribed a ProAir Albuterol rescue inhaler to treat these conditions. (Compl. at 8.) While an asthma

attack may occur at any time, Cirino often experiences them at night and while sleeping. (*Id.* at 12.)

On October 12, 2017, Cirino was arrested and brought to the Lehigh County Correctional Center. (*Id.* at 8.) When he arrived, a healthcare intake evaluator permitted Cirino to keep the emergency inhaler with him while incarcerated. (*Id.*) After he was assigned to his cell, Cirino alleges that a Physician's Assistant approached him and confiscated the inhaler. (*Id.* at 8–9.) She told Cirino that inhalers are not permitted to remain with an inmate within the facility, citing concerns that "staff will not be able to determine how often an inmate may be accessing and utilizing his inhaler." (*Id.* at 9.) Cirino contends that he "returned to his cell without a reasonable plan for resolve in the case of an attack." (*Id.*)

On the night of October 13, Cirino suffered a severe asthma attack in his cell. (*Id.*) He alleges that he was unable to yell, speak or call for assistance and that the guard on duty was asleep and otherwise unresponsive to his calls. (*Id.*) He also asserts that his cell was not equipped with a buzzer or emergency intercom that may have allowed him to call for assistance. (*Id.*) The next day, Cirino filed informal complaints with the staff and administration and filed an immediate request for sick call. (*Id.*) The complaints and requests were "summarily ignored and no action was taken." (*Id.*)

Over the course of the next three nights, Cirino again suffered severe asthma attacks. (*Id.* at 8.) He alleges that these attacks caused him extreme pain and physical injury that led to injuries including scar tissue in his lungs and a permanent need for C-PAP usage to sleep and breathe. (*Id.* at 9.) Cirino attaches to his Complaint an exhibit that purports to be a statement from his personal physician, confirming the

presence of scar tissue in Cirino's "bronchial stems." (Compl. Ex. A.) The doctor purportedly states that the scarring and increased mucus production, with C-PAP usage, is more than likely permanent and that such conditions are "new symptoms over the latter part of October, 2017." (*Id.*)

II

A

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). This plausibility determination is a

"context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

B

Because Cirino is proceeding *pro se*, the Court "must liberally construe his pleadings." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citation omitted). "Courts are to construe complaints so 'as to do substantial justice,' keeping in mind that *pro se* complaints in particular should be construed liberally." *Bush v. City of Phila.*, 367 F. Supp. 722, 725 (E.D. Pa. 2005) (quoting *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004)). Moreover, in a § 1983 action, the Court must "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)); *see also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution."). At the same time, *pro se* litigants "must allege sufficient facts in their complaints to support a claim . . . At the end of the day, they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

III

To establish a *prima facie* case under § 1983, Cirino must first demonstrate that a person acting under color of law deprived him of a federal right. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). He must also show that the person acting under color of law was personally involved in the deprivation. *See Johnson v.*

4

*Derose*, 349 F. App'x 679, 681 (3d Cir. 2009). Cirino can allege such personal involvement under either of two theories: (1) personal direction or actual knowledge and acquiescence in a constitutional violation, *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005), or (2) that a defendant, in his role as policymaker, acted with deliberate indifference in establishing a policy that directly caused the alleged constitutional violation, *Brown v. May*, No. 16-01873, 2017 WL 2178122, at *2 (E.D. Pa. May 17, 2017) (citing *A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

A

A pretrial detainee's claim of inadequate medical treatment is assessed under the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment prohibition against cruel and unusual punishment.[1] *See Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Even so, a pretrial detainee's claim is analyzed under the same standard set forth in *Estelle v. Gamble*, 429 U.S. 97 (1976). To establish claim for inadequate medical treatment, Cirino must show that (1) his medical needs were serious and (2) the defendant was deliberately indifferent to those needs. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

i

A "serious medical need" is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize

---

[1] It is not clear from Cirino's Complaint whether he was an inmate or a pretrial detainee while incarcerated at Lehigh County Correctional Center. He alleges that the United States Marshals arrested him and brought him to LCCC, where he remained in custody for two weeks before he was transferred. (Compl. at 8.) The Court therefore analyzes his claims under the framework for pretrial detainees.

5

the necessity for a doctor's attentions." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted). Cirino alleges that he suffers from severe asthma and hypertension as diagnosed by a physician. Asthma "can be, and frequently is, a serious medical condition, depending on the severity of the attacks." *See, e.g.*, *Board v. Farnham*, 394 F.3d 469, 484 (7th Cir. 2005)). He contends that on four separate nights he suffered a "severe and debilitating asthma attack" that rendered him unable to yell, speak, or call for assistance. (Compl. at 9.) He also alleges that he suffered permanent damages, including scarring and increased mucus production. Construing the complaint liberally and accepting the facts alleged as true, Cirino has sufficiently stated a serious medical condition for purposes of the Eighth Amendment.

ii

Deliberate indifference "requires obduracy and wantonness . . . which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse*, 182 F.3d at 197 (citation and quotation omitted). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference has been found where the official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197 (internal citations omitted). Deliberate indifference is also satisfied when prison authorities "deny reasonable requests for medical treatment . . . and such denial exposes the inmate to

6

undue suffering or the threat of tangible residual injury." *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

1

Cirino first alleges that a Jane Doe Physician's Assistant acted with deliberate indifference when she confiscated his inhaler on October 12, 2017. Cirino asserts that Jane Doe knew of his need for an emergency inhaler but intentionally prevented him from accessing the inhaler for the non-medical reason that "staff will not be able to determine how often an inmate may be accessing and utilizing his inhaler." (*Id.* at 9.) He contends that his injuries were caused because he did not have his inhaler, as he suffered several asthma attacks in the middle of the night. Cirino has alleged facts sufficient to establish that the Jane Doe nurse was deliberately indifferent to his serious medical needs.

However, the "[c]ase law is clear that an action cannot be maintained solely against Doe defendants." *Baker v. United States*, 642 Fed.Appx. 147, 152 (3d Cir. 2016); *see also Breslin v. Philadelphia*, 92 F.R.D. 764, 765 (E.D. Pa. 1981) (dismissing complaint against identified defendants warrants dismissing unnamed defendants); *Hindes v. F.D.I.C.*, 137 F.3d 148, 155 (3d Cir. 1998) (citing *Scheetz v. Morning Call, Inc.*, 747 F.Supp. 1515, 1534–35 (E.D.Pa. 1990) (noting that Federal Rules do not contemplate a plaintiff proceeding without a tangible defendant except in extraordinary circumstances), *aff'd on other grounds*, 946 F.2d 202 (3d Cir. 1991)). Because Cirino

fails to state a claim against any named Defendant, *see infra*, the Court dismisses all claims against Jane Doe.²

2

Cirino also appears to argue that Warden Miesel and Assistant Warden Donate were deliberately indifferent to his medical needs. These claims fail because Cirino does not allege that they were personally involved in the alleged constitutional violations. *See Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003). Cirino does not assert that Miesel or Donate were present when Jane Doe confiscated the inhaler or that they directed or acquiesced in the violation of his constitutional rights.³ Nor does Cirino contend that Miesel or Donate acted "with deliberate indifference in establishing a policy that directly caused the alleged constitutional violation." *Brown*, 2017 WL 2178122, at *2. Indeed, other than naming them as defendants and describing their position, Cirino does not mention either again in his Complaint.

B

The Court analyzes Cirino's claims against the County under the standard for municipal liability set forth in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Generally, a municipality will not be held liable under the doctrine of

---

² Should Cirino wish to proceed only against Jane Doe, he must submit an amended complaint identifying the Jane Doe defendant so that she may be served with the complaint. "[A]n appropriate method for the plaintiff to seek the identity of the [Jane] Doe defendants is through the use of a subpoena" at Lehigh County Correctional Center. *See Williams v. Bonds*, 2019 WL 1529961, at *6 n.5 (D.N.J. Apr. 9, 2019) (citing *Gerber v. Various Other Prison Officials*, No. 1:06CV01358, 2007 WL 1847582, at *2 (M.D. Pa. May 10, 2007) (report and recommendation adopted June 25, 2007)).

³ Cirino alleges that he filed informal complaints with the "staff and administration" after his initial asthma attack on October 12, 2017, as well as an immediate request with sick call the following morning. (Compl. at 9.) He contends that all requests were "summarily ignored and no action was taken." (*Id*.) However, Cirino has not plead with sufficient specificity which staff and administration members received his Complaint, or whether any defendant would have been aware of them such that they could be deliberately indifferent to his medical needs.

*respondeat superior* for the misconduct of its employees. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, a municipality can only be liable under § 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or informally adopted custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. 658). A successful *Monell* claim therefore must establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality and (3) that the constitutional violation was caused by the municipality's policy or custom. *See Natale*, 318 F.3d at 583–84; *Monell*, 436 U.S. at 658.

A policy "is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews*, 895 F.2d at 1480 (citation and quotation omitted). A custom must be established "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007) (emphasis added). "A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law." *Id.* (citations and quotation omitted).

"In either instance, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Andrews*, 895 F.2d at 1480). Since a municipality "cannot be deemed to have engaged in a constitutional violation by virtue of a policy, custom, or failure to

9

train" in the absence of a "conscious decision or deliberate indifference of some natural person," *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1063 (3d Cir. 1991), the complaint must allege facts showing "that a policymaker is responsible either for the policy or, through acquiescence, for the custom," *B.S. v. Somerset Cty.*, 704 F.3d 250, 275 (3d Cir. 2013) (quotation and citations omitted). Accordingly, to state a *Monell* claim upon which relief may be granted, a complaint must include the identity of the municipality's final policymaker and factual allegations that "link the alleged offending policies or customs to" the final policymaker. *Rees v. Office of Children & Youth*, 473 Fed. Appx. 139, 143 (3d Cir. 2012).

Cirino references a policy once in his Complaint. He alleges that Lehigh County has a "policy and protocol [ ] that all such inhalers be immediately removed from the personal possession of an inmate." (Compl. at 16.) This policy allegedly deviates from the accepted standards of medical care for treating asthma. *See* (*id*. at 25.) Even if these allegations are sufficient to state a policy under *Monell*, Cirino does not identify in his Complaint a policymaker for Lehigh County. Because he has failed to allege a link between the alleged deficient policy and any policymakers, his *Monell* claim against the County fails. *See, e.g.*, *Hope v. Fair Acres Geriatric Ctr.*, No. 15-06749, 2016 WL 1223063, at *6 (E.D. Pa. Mar. 29, 2016) (dismissing *Monell* claim where plaintiff failed to identify a policymaker).[4]

---

[4] In his response to the Motion to Dismiss, Cirino includes several new and relevant allegations. For instance, Cirino details two separate deaths that have occurred at Lehigh County Correctional Center after the inmates were denied their "keep on person inhaler" despite having a valid prescription for one. Cirino also appears to identify Warden Miesel as the policymaker for the County. However, "a plaintiff may not amend pleadings by way of statements made in a brief filed in opposition to a motion to dismiss." *Chi-Ming Yau v. He Cheng Rest. Corp.*, No. 12-6754 (JLL), 2013 WL 12303218, at *2 (D.N.J. Feb. 1, 2013) (citing *Commonwealth of Pa. ex rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)). Cirino must include these allegations in his amended complaint in order for the Court to consider them.

V

Pursuant to 28 U.S.C. § 1367(c)(3), the Court has discretion to decline to exercise supplemental jurisdiction over state law claims once all claims over which the Court has original jurisdiction have been dismissed. In such a situation, it is appropriate to refrain from exercising jurisdiction over the state law claims "in the absence of extraordinary circumstances." *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir. 1967). With the dismissal of the federal claims, the Court declines to exercise supplemental jurisdiction over Cirino's state law claims for medical negligence and damages under the Pennsylvania Constitution.

VI

"[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston*, 363 F.3d at 235; *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Under Federal Rule of Civil Procedure 15(a), "courts may grant . . . amendments 'when justice so requires.'" *Frasher v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004) (citing Fed. R. Civ. P. 15(a)). The Third Circuit has consistently held that if a claim is vulnerable to dismissal under Rule 12(b)(6), a plaintiff should be given the opportunity to amend the complaint and cure the deficiency, even if the plaintiff has not moved to amend the complaint. *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). Accordingly, Cirino is permitted to amend his Complaint consistent with the reasoning in this Memorandum and as specified in the attached Order.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.