IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RALPH J. CIRINO,<br><br>　　　　　　*Plaintiff,*<br><br>　v.<br><br>THE COUNTY OF LEHIGH,<br>PENNSYLVANIA, *et al.*,<br><br>　　　　　　*Defendants.* | CIVIL ACTION<br>NO. 18-3565 |

**PAPPERT, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　May 17, 2022

### MEMORANDUM

　　　After medical personnel at the Lehigh County Jail decided to manage Ralph Cirino's asthma with nebulizer treatments instead of an inhaler, he suffered several asthma attacks that went untreated because he was unable to summon help. Proceeding *pro se*, Cirino sued the county, several jail officials, the company that provides medical care at the jail, its CEO, and the physician assistant who prescribed nebulizer treatments.[1] He alleged negligence, intentional infliction of emotional distress, and violations of the United States and Pennsylvania Constitutions. The Defendants moved for summary judgment on all claims. The Court grants summary judgment on Cirino's federal claims and declines to exercise supplemental jurisdiction over his state law claims.

---

[1]　　At Cirino's request, the Court referred his case to the Prisoner Civil Rights Panel on April 23, 2019. (ECF 19.) The referral expired without any lawyer accepting the case on May 24, 2019. (*Id.*) On June 8, 2020, the Court referred Cirino's case to the Panel for a second time. (ECF 40.) Again, no lawyer accepted the case. The Court removed it from the Panel on September 23, 2020. (ECF 41.)

I

On October 12, 2017, the U.S. Marshals Service transferred Cirino from FDC Philadelphia to the Lehigh County Jail in advance of a plea colloquy before United States District Court Judge Edward G. Smith. (Am. Compl. at 1–2, ECF 31);[2] *see also* Notice of Change of Plea Hearing, *United States v. Cirino*, No. 17-355 (E.D. Pa. Oct. 5, 2017), ECF 17. The marshals also brought Cirino's medications, including an albuterol inhaler he used to treat his asthma. (Pl.'s Resp. Lehigh Cnty.'s Mot. Summ. J., Ex. A, ECF 63.) Cirino carried a second inhaler with him in the van. (Am. Compl. at 2.) But jail staff confiscated the inhaler as soon as he arrived, explaining that jail policy prohibited inmates from possessing inhalers. (Am. Compl. at 2.)

During an initial medical screening later that day, a medical assistant documented Cirino's asthma diagnosis and verified his medications, including his albuterol inhaler. (PrimeCare Defs.' Statement of Undisputed Facts, Ex. E., ECF 51-6 at 6); (Pl.'s Response to PrimeCare Defs.' Mot. Summ. J., Exs. B–C, ECF 72 at 31, 33). The assistant reiterated that inmates were not allowed to keep inhalers. (Am. Compl. at 3.) When Cirino objected, a nurse informed him he could keep an inhaler only if the jail's medical staff ordered it. (*Id.*) Eventually, someone contacted one of the jail's physicians, who ordered an inhaler. (*Id.*); *see also* (Pl.'s Response to PrimeCare Defs.' Mot. Summ. J., Ex. D, ECF 72 at 35). Cirino was allowed to keep his inhaler that night. (Am. Compl. at 3.)

---

[2] The Court treats Cirino's verified complaint, which was signed under penalty of perjury, as an affidavit in opposition to summary judgment. *See Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 443 (3d Cir. 2020).

The following day, Cirino was seen by Megan Hughes, a certified physician assistant. (PrimeCare Defs.' Statement of Undisputed Facts ¶¶ 7, 21, ECF 51.) She confirmed his asthma diagnosis, but replaced his inhaler with an albuterol nebulizer. (*Id.* ¶¶ 22, 26–28.) She explained that a nebulizer would allow staff to monitor how often Cirino needed treatment. (Am. Compl. at 3.) She told him he could contact an officer if he felt he needed a breathing treatment. (PrimeCare Defs.' Statement of Undisputed Facts ¶¶ 27–28.) Cirino claims he told Hughes he often experienced asthma attacks at night and worried he would have no way to summon help, but Hughes confiscated his inhaler nevertheless. (Am. Compl. at 3.)

Cirino had an asthma attack that night which left him unable to call for help; his attempts to attract attention by banging on his cell door proved fruitless. (*Id.*) Indeed, Cirino claims he saw the officer on duty asleep at his station, and the same thing happened each of the next three nights. (*Id.*)

The parties vigorously dispute whether Cirino ever made jail officials or medical staff aware of these attacks. Cirino maintains he submitted sick calls each morning. (*Id.*) In a sick call request from October 14, the day after the first attack, he wrote "I had a severe asthma attack because I didn't have my inhaler. Can you plz get it to me?" (Pl.'s Resp. to Lehigh Cnty's Mot. Summ. J., Ex. D, ECF 63 at 21.) The form indicates it was "received in medical" the following day. (*Id.*) The response was "will be seen." (*Id.*)

Cirino put in another sick call request on October 15. (*Id.* at 22.) It read, "Please send my inhaler with night meds. I had another asthma attack last night and I get them at night and how do you expect me to breathe with no inhaler?" (*Id.*) Again,

3

the response simply said, "will be seen." (*Id.*)  It was purportedly "received in medical" on October 17, two days after Cirino made the request.  (*Id.*)

Cirino also claims he submitted "requests to staff" (informal grievances) during this time.  (Decl. Ralph Cirino, ECF 63 at 35.)  In an October 15 request he wrote "I have asthma.  I came with 2 inhalers.  You took both.  I keep having asthma attacks and your [sic] not doing anything.  I put **2** sick calls already please do something."  (Pl.'s Resp. to Lehigh Cnty's Mot. Summ. J., Ex. D, ECF 63 at 19.)  The response, dated October 16, was "please fill out sick call."  (*Id.*)  Cirino submitted another informal grievance the next day.  He wrote, "Please ask medical to send my inhalers.  I have asthma and no one is doing anything about it.  This is life and death I can't breathe at night."  (*Id.* at 20.)  The response instructed him not to make duplicate requests.  (*Id.*)  He also contends he filed "formal administrative complaints" the morning after each attack, all of which were ignored.  (Am. Compl. at 3.)

After Cirino's proceeding before Judge Smith on October 18, Smith requested the Marshals return Cirino to FDC Philadelphia.  (Am. Compl. at 4.)  Cirino left the Lehigh County Jail on October 26, 2017.  (Pl.'s Resp. to Lehigh Cnty's Mot. Summ. J., Ex. H, ECF 63 at 30.)  His medical records indicate the only nebulizer treatment he received at the jail was administered the morning of October 17.  (PrimeCare Defs.' Statement of Undisputed Facts ¶¶ 32–33.)  Cirino maintains that because of his asthma attacks at the jail, he experiences pain when breathing, must use a CPAP machine at night, suffers from post-traumatic stress disorder and fears confined spaces.  (Am. Compl. at 3.)

After returning to federal custody, Cirino sued Lehigh County and PrimeCare Medical, Inc., the company that provides medical services at Lehigh County Jail.  *See* (Am. Compl. at 2); (Lehigh Cnty.'s Statement of Undisputed Facts ¶¶ 5–6, ECF 53).  He also sued Prime Care's CEO, Thomas Webber, Physician Assistant Hughes, "Warden" Dan Miesel and "Assistant Warden" Janine Donate in their individual and official capacities.  (Am. Compl. at 2.)  He alleged the Defendants violated the Fourteenth Amendment through their deliberate indifference to his medical needs and the First Amendment by ignoring his grievances.  He also brought state law claims for negligence, intentional infliction of emotional distress and violating the Pennsylvania Constitution.

II

Summary judgment is proper if the movant proves "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  A fact is material if it may affect the outcome of the suit "under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  A mere scintilla of evidence supporting the nonmoving party, however, will not suffice. *Id.* at 252.  Rather, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256.  These facts must allow it to "make a sufficient showing on essential elements" for which it bears the burden of proof. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015).

At summary judgment, a court may consider any material in the record that may be admissible at trial. *See* Fed. R. Civ. P. 56(c); *Pamintuan v. Nanticoke Memorial Hosp.*, 192 F.3d 378, 387–88 & n.13 (3d Cir. 1999). In doing so, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). But it need not credit "[u]nsupported assertions, conclusory allegations, or mere suspicions." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). Nor may a court make credibility determinations or weigh the evidence. *See Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016).

The same standards apply to prisoners proceeding *pro se*. With limited exceptions, "federal courts treat pro se litigants the same as any other litigant." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). "A *pro se* incarcerated person is not permitted to disregard the Federal Rules of Civil Procedure, and is not relieved of his obligation to cite competent evidence." *Talbert v. Corr. Dental Assocs.*, No. 18-5112, 2020 WL 6530317, at *1 (E.D. Pa. Nov. 5, 2020).

### III

#### A

A prisoner may not bring a lawsuit challenging the conditions of his confinement under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and applies to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To properly exhaust a claim, an inmate must "complete the administrative review process" in compliance with all applicable procedural rules prior to filing suit in federal court.

*Woodford v. Ngo*, 548 U.S. 81, 88 (2006). But a prisoner need only exhaust grievance procedures that are actually "available." *Ross v. Blake*, 578 U.S. 632, 642 (2016). They must be "capable of use" to obtain "some relief for the action complained of." *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

Exhaustion is an affirmative defense a defendant must prove. *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). But once the defendant has shown "the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Id.*

### B

Lehigh County Jail has a three-step grievance process. First, an inmate must attempt to resolve a grievance informally, either verbally or using an "Inmate Request to Staff" form. (Lehigh Cnty.'s Statement of Undisputed Facts, ECF 53 at 51.) Staff are instructed to respond to informal grievances within fourteen days. (*Id.*) If the inmate is "unable to resolve the grievance informally," he may proceed to the second step by filing a formal grievance. (*Id.*) He must do so within twenty-one days of "the event that triggered the grievance." (*Id.* at 52). If the Grievance Coordinator accepts the grievance, a staff member will investigate and respond within fifteen days. (*Id.*) An inmate can initiate the third step of the process by appealing the formal grievance decision to the warden within seven days. (*Id.* at 53.) The process is complete when the warden decides the appeal on its merits. (*Id.*)

A genuine issue of material fact remains regarding whether Cirino exhausted his available remedies. Most significantly, Cirino contends in his verified complaint that he filed "formal administrative complaints" regarding his inhaler, and that those

7

complaints were ignored. (Am. Compl. at 3.) While the jail's grievance process requires an inmate to file a formal grievance even if no one responds to his informal grievance, there is no indication inmates can or should file an appeal if no one responds to his formal grievance. (Lehigh Cnty.'s Statement of Undisputed Facts, ECF 53 at 51–52.) When a grievance process does not "contemplate an appeal from a non-decision," the prison's failure to respond to a grievance renders the process unavailable. *Small v. Camden Cnty.*, 728 F.3d 265, 273 (3d Cir. 2013).

While Defendants maintain Cirino never filed any grievance, formal or informal, "self-serving affidavits pointing to specific facts can create a genuine issue of material fact sufficient to survive summary judgment." *Paladino v. Newsome*, 885 F.3d 203, 209 (3d Cir. 2018). Cirino's verified complaint sets forth such facts. He claims that on the mornings after his second, third and fourth asthma attacks, he filed "formal administrative complaints." (Am. Compl. at 3.) In contrast, his complaint describes the grievance he filed on October 14 as an "informal administrative complaint." (*Id.*) His averment that prison officials ignored three "formal" complaints creates a genuine dispute about whether the jail failed to respond to a formal grievance regarding his inhalers, rendering its administrative remedies unavailable.

C

Cirino does not focus on the formal grievances he claims to have filed in his responses to the Defendants' motions. He argues instead that the jail's process was unavailable because he was transferred to federal custody. That argument is less persuasive.

The exhaustion inquiry focuses on the administrative processes of the facility where the challenged conduct occurred, not where the prisoner is at the time he filed suit. *King v. McCarty*, 781 F.3d 889, 894 (7th Cir. 2015), *overruled on other grounds by Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020). It may be that Cirino's transfer relieved him of his obligation to continue exhausting his grievance after he left the jail,[3] but it would not excuse his failure to file a formal grievance while he was still there. Cirino had ten days from the time he received a response to his informal grievance to the time he left the jail to file a formal grievance, and he knew he would be transferred eight days before it happened. During that time, the jail's grievance procedure remained "capable of use" to obtain "some relief for the action complained of," even if there was no guarantee the jail would act on his formal grievance before he left. *Ross*, 578 U.S. at 642 (quoting *Booth*, 532 U.S. at 738 (2001)); *see also Singleton v. Prison Health Servs.*, No. 11-1184, 2012 WL 3757553, at *4 (M.D. Pa. Aug. 28, 2012) (transferred prisoner must still exhaust remedies in the absence of any "indication that the transfers . . . inhibited [his] ability to file a grievance.").

Cirino's contention that jail policy required him to wait for fourteen days before filing a formal grievance is unconvincing. The policy directs staff to "answer all written informal grievances" within fourteen days, but it does not instruct inmates who receive an earlier response to sit on their hands. *See* (Lehigh Cnty.'s

---

[3] The jail's grievance policy says nothing about how to pursue and appeal grievances after a transfer, and a prisoner cannot be expected to exhaust remedies he does not know about. *Hardy v. Shaikh*, 959 F.3d 578, 586 (3d Cir. 2020); *see also Murphy v. Grochowski*, No. 18-01404, 2020 WL 806584, at *14 (M.D. Pa. Jan. 7, 2020*), report and recommendation adopted*, 2020 WL 815773 (M.D. Pa. Feb. 18, 2020) (denying summary judgment on exhaustion because "nothing in the [jail's] grievance policy would have put [the plaintiff] on notice that he had to (or could) pursue a grievance . . . after he had been transferred.").

9

Statement of Undisputed Facts, ECF 53 at 51). All inmates must do before filing a formal grievance is "*attempt* to resolve [the] issue informally." (*Id.* (emphasis added).) An unsatisfactory response to an informal complaint would satisfy that requirement, even if it arrived well before fourteen days had elapsed.

There is some tension between Cirino's verified complaint and his decision to argue the jail's remedies were unavailable only because a formal grievance would have been premature at the time he left the jail. Nevertheless, nothing in his subsequent declarations directly contradicts his complaint, and the Court gives him the benefit of his earlier averments. Fed. R. Civ. P. 56(c)(3).

## IV

### A

The Due Process Clause of the Fourteenth Amendment prohibits deliberate indifference to the serious medical needs of pretrial detainees. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). Both inadequate medical care and its outright denial can support a deliberate indifference claim, but the proof required varies. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017). When care is provided, the treatment is presumptively proper "absent evidence that it violates professional standards of care." *Id.* As a result, an inadequacy of care claim requires objective evidence "the particular treatment or diagnosis fell below a professional standard of care." *Id.* at 536. When the inadequacy of the patient's care "would not be obvious to a layperson," expert medical testimony is required. *Id.* In other circumstances, "other forms of extrinsic proof may suffice." *Id.* By contrast, when care is delayed or denied, such extrinsic proof is unnecessary. *Id.*

In either case, mere negligence is not enough. *Pearson*, 850 F.3d at 537; *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015). At minimum, a pretrial detainee must show the defendant acted with "reckless disregard" to the plaintiff's serious medical needs. *Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)).

Under the Eighth Amendment, deliberate indifference requires the defendant to be "subjectively aware" of the risk of harm to the plaintiff. *Farmer v. Brennan*, 511 U.S. 825, 829 (1994); *Pearson*, 850 F.3d at 538. The standard for pretrial detainees is less settled, though they are entitled to at least as much protection as convicted prisoners. *Natale*, 318 F.3d at 581 & n.5; *see also Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 593–597 (6th Cir. 2021) (describing circuit split and joining Second, Seventh, and Ninth Circuits in holding a pretrial detainee must prove "more than negligence but less than subjective intent—something akin to reckless disregard") (quoting *Castro*, 833 F.3d at 1071). The Court need not resolve this issue, however, because facts sufficient to support a finding of objective recklessness would also allow an inference of subjective indifference. *Cf. Pearson*, 850 F.3d at 535; *Farmer*, 511 U.S. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."); *see also Palakovic v. Wetzel*, 854 F.3d 209, 224 n.15 (3d Cir. 2017) (declining to "parse the distinction" between "deliberate indifference" and "reckless indifference").

B

Cirino has not produced competent evidence Hughes' decision to replace his inhaler with nebulizer treatments fell below a professional standard of care. The

11

appropriate care for an asthma patient like Cirino, including the risks of asking him to rely on prison staff to request breathing treatments, is beyond the knowledge of an ordinary layperson. Accordingly, Cirino is required to present expert medical testimony that would permit a jury to find his care was objectively deficient. He has not.

In response to Defendants' motions, Cirino points to the certificate of merit from "Brian Jones, MD" he attached to his original complaint. *See* (Pls.' Resp. Lehigh Cnty.'s Mot. Summ. J., Ex. L, ECF 63 at 41.) But this document—like the other statements supposedly from physicians and nurses attached to his original and amended complaints—was not signed under penalty of perjury. (*Id.*); *see also* (Compl., Exs. A–C, ECF 2 at 30–32) (statements of "A.H. Jenner, MD," "Kathy Mahern, RN," and "Brian Diaz, MD"); (Am. Compl., Ex. A, ECF 31 at 7) (statement of "A.H. Jenner, MD"). Unsworn declarations not signed under penalty of perjury cannot create a genuine issue of material fact. *Doe v. Heart Sol., PC*, 923 F.3d 308, 315 (3d Cir. 2019); *see also Fowle v. C & C Cola, a Div. of ITT-Cont'l Baking Co.*, 868 F.2d 59, 67 (3d Cir. 1989) (refusing to consider unsworn export report at summary judgment).

Even if the Court could consider these documents, they cannot defeat summary judgment because there is no indication the opinions they contain are admissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). An affidavit or declaration used to oppose a motion for summary judgment must "show the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). But these documents offer no details about their purported authors' qualifications or the grounds for their conclusions. Accordingly, they do not "show" their opinions can satisfy Rule 702's "trilogy of restrictions on expert testimony:

12

qualification, reliability and fit." *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).[4]

C

Cirino has not provided an adequate substitute for expert testimony. He contends the Defendants' prescribing practices fell short of National Commission on Correctional Health Care's standard for medication services. The relevant standard, J-D-02, requires medication services to be "clinically appropriate and provided in a timely, safe, and sufficient manner." (PrimeCare Defs.' Statement of Undisputed Facts, Ex. C at 60, ECF 51-4.) But terms like "appropriate," "timely," "safe" and "sufficient" provide little concrete guidance. Without more information about asthma and asthma treatment, a lay jury cannot determine whether Hughes' decision to prescribe nebulizer treatments under the conditions that existed at Lehigh County Jail fell short of that standard.

In fact, the Commission's discussion of its standard seems to undercut Cirino's position. It explains that "*if* a self-medication program is used," it should be developed through collaboration with the "responsible physician" who will "develop a list of self-administered medications." (*Id.* at 61 (emphasis added).) This suggests self-medication programs are not necessary to comply with the medical services standard and that the standard does not require any particular drugs be offered through a self-medication program.

---

[4] Additionally, these documents do not comply with the requirements for an expert report under Federal Rule of Civil Procedure 26(a)(2)(B). It does not appear Cirino disclosed any experts or tendered any expert reports pursuant to Rule 26. *See* (Reply PrimeCare Def.'s Supp. Mot. Summ. J. at 5). Nor does Cirino's sur-reply respond to Defendant's objections to his proffered "expert." *See* (Pl.'s Resp. PrimeCare's Reply, ECF 80 at 2–3).

Cirino points to two earlier cases in which inmates allegedly died of asthma attacks at Lehigh County Jail because they were not allowed to have inhalers in their cells. *See Fargione v. Sweeney*, No. 16-5878, 2019 WL 859261 (E.D. Pa. Feb. 22, 2019); *Magditch v. Lehigh County*, No. 2012-C-5428, 2015 WL 6085318 (Pa. Ct. C.P. Lehigh Cnty. July 31, 2015). But neither case resulted in judgments that might have preclusive effect in this litigation, and there is no evidence in the record to substantiate their allegations. The mere fact that similar accusations have been leveled at the defendants before cannot establish that their treatment decisions deviated from the medically appropriate standard of care. Determining whether those deaths were attributable to the decision not to provide the decedents with inhalers—and whether that decision was professionally unreasonable—would require the same expert testimony regarding asthma and asthma treatment Cirino failed to provide.

D

Nor can Cirino proceed against the Defendants on the theory that the delay in responding to his sick calls, rather than Hughes' initial prescribing decision, violated the Fourteenth Amendment. First, there is no evidence from which a jury could infer Hughes or any other individual Defendant knew or should have known about the delays in processing sick calls, or that the slow response to written sick calls would result in inadequate treatment. Of the four, only Hughes had any connection to or knowledge of Cirino's medical care, and nothing suggests she ever learned Cirino was having asthma attacks or that those attacks were going untreated. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Yoast v. Pottstown Borough*, 437 F.

Supp. 3d 403, 430 (E.D. Pa. 2020) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

Second, even if a jury could conclude some unidentified member of the prison or medical staff had demonstrated deliberate indifference by failing to act on Cirino's requests in a timely manner, PrimeCare and Lehigh County could not be held liable for that violation. In order to hold a municipality or a corporation performing municipal functions liable under § 1983, the plaintiff must prove his constitutional injury was the consequence of (1) an unconstitutional municipal policy or custom or (2) a failure or inadequacy demonstrating deliberate indifference to the risk the plaintiff's rights would be violated. *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).

Cirino has presented no evidence PrimeCare or Lehigh County had a policy or custom of not processing sick call requests in a timely manner, nor was it obvious the jail's practices for responding to sick calls would result in constitutional violations. The evidence suggests medical staff were expected to respond to sick calls within twenty-four hours. *See* (PrimeCare Defs.' Statement of Undisputed Facts, Ex.E, ECF 51-6 at 13 ("A Nurse for sick call will see you daily.")). In addition, prisoners with urgent medical needs were instructed to alert an officer immediately. (*Id.*) Without evidence Lehigh County or PrimeCare knew these procedures were not working, they cannot be liable for any constitutional violation the delays in processing Cirino's sick call requests may have caused.

V

The Defendants are also entitled to summary judgment on Cirino's First Amendment claim. Cirino claims the jail's "pattern of ignoring inmate grievances"

15

violated his right "to petition the Government for redress of grievances." (Am. Compl. at 5). But prisoners have "no constitutional right to a grievance procedure." *Bramble v. Wetzel*, No. 20-2394, 2022 WL 55021, at *4 (M.D. Pa. Jan. 5, 2022); *see also Fears v. Beard*, 532 F. App'x 78, 81 (3d Cir. 2013) (affirming dismissal of First Amendment claim based on denial of prisoner's grievance). Even assuming Defendants were responsible for ignoring Cirino's grievances—and there is no evidence they were—Cirino would have no claim under § 1983. *Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007).

## VI

Cirino's remaining claims are based on state law. A party seeking to invoke the Court's diversity jurisdiction must allege complete diversity in his complaint. Fed. R. Civ. P. 8(a)(1); *see also Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 106 (3d Cir. 2015). Cirino did not. Instead, he claimed the Court had original jurisdiction over his federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367(a). (Am. Compl. at 1.)

District courts may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c). Indeed, when the claims over which it has original jurisdiction are dismissed before trial, the court "*must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (citation omitted) (emphasis in original). Here, they do not. Cirino is now in a residential reentry program in Philadelphia. Should he choose to refile his claims in

state court, he may be better positioned to find counsel, consult physicians, and conduct discovery than he was during the present litigation.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.